IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMMIE MARTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. **3:10-cv-01035-JPG-PMF** |
| | ) |
| DAVID A REDNOUR, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is the defendants' motion for summary judgment (Doc. 24). For the following reasons, it is recommended that the defendants' motion for summary judgment (Doc. 24) be denied.

### I.   FACTS

The plaintiff, Timmie Martin, is presently an inmate at Pontiac Correctional Center ("Pontiac") and was formerly an inmate at Menard Correctional Center ("Menard").[1] At all relevant times for this lawsuit, Martin was an inmate at Menard. In its initial screening order (Docs. 8, 10), the Court described the remaining claim as follows:

> The first excessive force incident, which occurred on July 7, 2010, began when Defendant Morris cuffed Plaintiff's hands behind his back and removed him from his cell. Soon after this, Plaintiff alleges that Defendant Bedinger grabbed him and "started to [illegible] me into the door of the holding cage Hard!" (Doc. 1-1, p. 4). When Plaintiff asked where Defendant Bedinger was taking him, he answered, "Shut the fuck up nigger your black nigger ass is going to seg!" (Doc. 1-1, p. 4). As Defendant Bedinger walked Plaintiff down the hall, he pulled and twisted Plaintiff's arms up toward Plaintiff's head, inflicting pain on Plaintiff and making it difficult for him to walk. As a result of this incident, Plaintiff's

---

[1] Pontiac and Menard are correctional facilities under the jurisdiction of the Illinois Department of Corrections ("IDOC").

1

> shoulder was injured to the extent that the Health Care Unit issued him a year-long permit allowing him to be handcuffed in the front.
> …
> On July 7, 2010, Defendant Bedinger pulled and twisted Plaintiff's cuffed arms upward while marching him down the gallery. The racial expletives uttered by Defendant Bedinger as well as the injury sustained by Plaintiff indicate that the force may have been maliciously applied, and more than de minimis. Defendant Morris was present when Defendant Bedinger grabbed Plaintiff, then pulled and twisted his arms, but did not intervene. At this stage of the litigation, it cannot be determined whether the force used in this instance was de minimis or was an attempt to cause real harm. Thus, this portion of Plaintiff's claim is not subject to dismissal at this time. This claim and the other excessive force claims shall be further discussed below, in relation to severance of the claims.

## II. PROCEDURAL HISTORY

On December 21, 2010, Martin filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against 42 named defendants. Doc. 1. On October 20, 2011, the Court conducted preliminary review of the complaint pursuant to its authority in 28 U.S.C. § 1915A. *See* Docs. 8, 10. In that order, the Court dismissed all but two defendants. *See id.* at 9. The Court found that a claim remained against defendants Bedinger and Morris for excessive force. *See id* at 6-8.

On March 2, 2012, the remaining defendants filed the instant motion for summary judgment. *See* Doc. 24. After initially failing to respond to the motion for summary judgment, the Court issued, on April 10, 2012, an order to show cause why judgment should not be entered for the defendants. *See* Doc. 29. The plaintiff responded to the order to show cause on April 12, 2012. *See* Docs. 30, 31. The Court found that a genuine issue of material fact existed for an evidentiary hearing on the defendants' affirmative defense of failure to exhaust administrative remedies on April 17, 2012. *See* Doc. 32. The evidentiary hearing was held on July 13, 2012. *See* Doc. 40.

### III. DISCUSSION

Pursuant to the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with a lawsuit. *See* 42 U.S.C. § 1997e(a); *see also Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). The Seventh Circuit has taken a strict compliance approach to exhaustion, requiring inmates to follow all grievance rules established by the correctional authority. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Exhaustion is an affirmative defense, and the burden of proof is on the defendants." *Id.* (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The IDOC has a three-step process that prisoners under their jursidiction are required to follow in order to exhaust administrative remedies. For the first step, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810. At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *See id*. The grievance must contain factual details regarding each aspect of the dispute, including "what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the [dispute]." *Id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 Ill.Admin.Code § 504.830. The CAO typically advises the prisoner of the decision at step two in writing within two months after receipt of the written grievance. *See id.* The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the CAO

at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. *See* 20 Ill.Admin.Code § 504.850. The ARB typically makes a final determination within six (6) months after receipt of the appealed grievance. *See id*. With regard to prisoners under the control of the IDOC, administrative remedies may be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

When there are factual issues relating to the exhaustion defense, the Court must resolve those issues by conducting an evidentiary hearing. *See Pavey*, 544 F.3d at 740-42. The Court is permitted to make findings of fact and credibility assessments of witnesses at such an evidentiary hearing. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). If the Court finds that the prisoner exhausted his administrative remedies, "the case will proceed to pretrial discovery, and if necessary a trial, on the merits." *See Pavey*, 544 F.3d at 742. If the Court finds that the prisoner did not exhaust his administrative remedies, the Court determines whether:

> (a) the plaintiff has unexhausted remedies, and so he must go back and exhaust;
> (b) or, although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or
> (c) the failure to exhaust was the prisoner's fault, in which event the case is over.

*Id*.

### A. The Defendants' Motion for Summary Judgment (Doc. 24)

The defendants argue that Martin failed to properly exhaust a grievance regarding the July 7, 2010, incident. *See* Doc. 25 at 5-6. In support, the defendants have provided the affidavit of Gina Allen, an ARB board member. *See* Doc. 25-1 at 1-3. Ms. Allen attests that the ARB received two grievances from the plaintiff regarding the July 7 incident. *See id*. The defendants have attached 16 pages of grievances and responses to those grievances as an exhibit to the (Doc. 24) motion for summary judgment. *See id*. at 4-20. The exhibit consists of the following:

1. A grievance dated July 7, 2010, and a grievance dated July 8, 2010, which were originally filed at the institutional level as emergency grievances. *See id*. at 4, 6. They were received by the CAO on July 19, 2010, and replied to on the same day by the CAO, who indicated that the grievances did not constitute emergencies and should be submitted through the normal grievance process. *See id*. It appears these grievances were received by the ARB July 27, 2010. *See id*. The grievances name defendant Bedinger and "C/O Morrison." *See id*. at 4-5.
2. Return of Grievance or Correspondence from the ARB dated August 2, 2010, which indicates that the ARB received a grievance dated July 7, 2010, on July 27, 2010. *See id*. at 10. This letter indicates that the July 7, 2010, grievance was returned to Martin because the grievance did not contain a counselor's response at step one or a Grievance Officer or CAO response at step two. *See id*.
3. A grievance dated July 7, 2010, and a grievance dated December 14, 2010, which do not appear to contain a counselor's response at step one or a Grievance Officer or CAO response at step two. *See id*. at 11-19. These two grievances were received by the ARB on January 5, 2011. *See id*. at 11, 13, 20. These two grievances were also attached to the plaintiff's complaint (Doc. 1-1) and form the basis for the remaining allegations in this lawsuit. *See* Docs. 8, 10. Defendants Bedinger and Morris are named in these two grievances. *See* Doc. 25-1 at 11.
4. Return of Grievance or Correspondence from the ARB dated January 7, 2011, which indicates that the ARB received the July 7, 2010, and December 14, 2010, grievances on January 5, 2011. *See id*. at 20. This letter indicates that the July 7, 2010, grievance was returned to Martin because the grievance was not submitted in the timeframe outlined in Department Rule 504. *See id*.

The grievances received by the ARB on January 5, 2011, (*see* Para. 3-4, *above*) are not relevant. This lawsuit was filed on December 21, 2010. *See* Doc. 1. A prisoner cannot file suit and then exhaust his administrative remedies while suit is pending. *See, e.g., Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (citing *Perez*, 182 F.3d 532). Even if the grievances considered in the letter had been filed before the start of this litigation, the relevant allegations appear to be submitted to the ARB outside of the timeframe provided by the IDOC rules. Grievances must be filed within 60 days of the incident. *See* 20 Ill.Admin.Code § 504.810. The alleged incident occurred on July 7, 2010, and Martin submitted his grievances to the ARB on

January 5, 2011. The prisoner is required to strictly follow all rules established by the confining authority. *See Dole*, 438 F.3d at 809.

The only remaining grievances to consider are dated July 7, 2010, and July 8, 2010. *See* Para. 1-2, *above*. The defendants argue that these grievances were not properly filed at steps one of two of the grievance process. In response, the plaintiff attests that prison officials at Menard did not respond to his grievances. *See* Doc. 30 at 2. The plaintiff is only required exhaust administrative remedies that are actually available to him. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citing 42 U.S.C. § 1997e(a); *Johnson v. Litscher*, 260 F.3d 826, 829 (7th Cir. 2001)); *see also Dale*, 376 F.3d at 656; *Dole*, 438 F.3d at 808-11. If it were found to be true that Menard prison officials disregarded or lost Martin's July 7-8 grievances, then the Court could find that administrative remedies were unavailable to Martin. *See, e.g., Dole*, 438 F.3d at 812 (finding that exhaustion was unavailable to pro se prisoner who claimed to have filed a grievance that IDOC prison officials had no record of). Because there appeared to be unresolved factual issues as to whether the plaintiff exhausted his available administrative remedies, the Court set an evidentiary hearing in accordance with *Pavey v. Conley*, 544 F.3d 739.

### B. July 13, 2012 Evidentiary Hearing

The Court heard testimony from Martin at the July 13, 2012 evidentiary on the defendants' affirmative defense of failure to exhaust administrative remedies. The Court first asked Martin about the grievances dated July 7 and July 8, 2010. As summarized above, those grievances were initially filed as emergency grievances at the institutional level. *See* Doc. 25-1 at 4, 6. The CAO informed Martin on July 19 that the grievances should be submitted through the normal grievance process. *See id*. The grievances were then received by the ARB July 27, 2010. *See id*. The ARB returned them to Martin on August 2 because the grievance did not contain a

counselor's response at step one or a Grievance Officer or CAO response at step two. *See id.* at 10. Martin was asked directly whether or not he ever sent the July 7 and 8 grievances to a grievance counselor at Menard. Martin responded in the affirmative and stated that he attempted to give the grievances to counselor Mueller and another counselor. He indicated that these counselors refused to sign off on them and send them back to him. After pressing Martin on the date he sent his grievances to the counselor, he testified that he sent the grievances to the counselor sometime after he received the grievances back from the CAO on July 19.

Because the record was still unsatisfactorily unclear as to whether Martin sent his grievances to the counselors at Menard after receiving them from the CAO on July 19, the Court concluded the hearing. The Court ordered the defendants to file as an exhibit the counselor logs of the grievance counselors at Menard for the relevant time period of July 7 through September 7, 2010. The defendants filed the counselor logs on July 27, 2012. *See* Docs. 41, 41-1. Two entries on the submitted counselor logs appear relevant. Those entries appear, in pertinent part, as follows:

1) 8/10/2012: Entry describing Face to face meeting with Latoya T. Owens, Correctional Casework Supervisor. "Answered and returned offender grievance on staff conduct."

2) 8/16/2012: Entry by Jeanette D. Cowan, Correctional Casework Supervisor. "Grievance officer returned two grievances to inmate regarding staff conduct and idr. [CAO] deemed them not an emergency on 7-19-10 and inmate sent them directly to ARB. Inmate did not follow procedure."

Doc. 41-1 at 1. It is Martin's testimony that he attempted to resubmit the grievances to his grievance counselor at Menard, and they refused to address the grievances.[2] He indicated

---

[2] At one point in his testimony, Martin recalled that one counselor, in particular, routinely and intentionally refuses to address inmate issues. Describing his encounters with this counselor, Martin said, "She would come through and you would tell her that you have a complaint or

several other times that attempted to give his grievance to a counselor, but she would not sign and return it so that he could proceed to step two of the grievance procedure at Menard. The entries in the grievance log tend to bolster this testimony rather than cause the Court to question his credibility.

It appears that after Martin mistakenly sent his July 7 and 8 grievances to the ARB and they were returned in early August 2010, staff at Menard then refused to address the grievances in the middle of August 2010 because Martin "did not follow procedure." *See id*. Martin, however, was attempting to follow procedure in the middle of August 2010 when he received his rejected July 7 and 8 grievances back from the ARB. He then attempted to resubmit them to Menard counselors and grievance officers in the middle of August. It appears more likely than not that Menard officials then refused to process the grievances because they were rejected by the ARB. The fact that Martin did not initially follow the correct procedure when he forwarded his grievances to the ARB on July 27 does not mean that he cannot thereafter reattempt to exhaust his available administrative remedies. Martin had until September 7, 2010, to properly file a grievance regarding the July 7, 2010, incident. *See* 20 Ill.Admin.Code § 504.810 ("A grievance shall be filed within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance.").

The Court finds no reason to question the credibility of Martin's testimony that he attempted to reengage the normal grievance procedure after receiving his rejected July 7 and 8 grievances back from the ARB in early August. The refusal of Menard officials to allow Martin

---

grievance or something and she would say, 'I don't want to see that. I don't want to look at that. I'm not looking at that.' That's her exact words. 'I'm not looking at that. What else you need? You need nothing else?' and [then she would] walk off on you. You could be talking to her and trying to explain your situation to her, the woman would walk off on you or get snotty with you ..."

to engage the grievance procedure made administrative remedies unavailable to him. As the Court noted above, a plaintiff is only required exhaust administrative remedies that are actually available to him. *See* PART III.A, *supra*. The defendants have not met their burden of demonstrating that Martin failed to exhaust his available administrative remedies.

## IV. RECOMMENDATION

For the forgoing reasons, it is recommended that the defendants' motion for summary judgment (Doc. 24) be denied.

**SO RECOMMENDED.**

**DATED: August 6, 2012.**

                                            */s/ Philip M. Frazier*
                                            PHILIP M. FRAZIER
                                            UNITED STATES MAGISTRATE JUDGE